418 So.2d 485 (1981)
Huey P. ADAMS
v.
NEW ORLEANS PUBLIC SERVICE INC.
No. 81-C-0784.
Supreme Court of Louisiana.
September 28, 1981.
On Rehearing August 4, 1982.
Dissenting Opinion August 30, 1982.
Rehearing Denied September 3, 1982.
Ronald L. Wilson, New Orleans, for plaintiff-applicant.
A. R. Christovich, Jr., New Orleans, for defendant-respondent.
Joel P. Loeffelholz, New Orleans, (Amicus Curiae).
*486 DIXON, Chief Justice.
This is a workmen's compensation case involving a claim of disability from attacks of angina pectoris.
Recovery was denied by both the trial court and the Court of Appeal. The appellate court held that plaintiff's episodes of angina were due to arteriosclerosis and were not work related. 395 So.2d 470 (La. App. 4th Cir. 1981).
Plaintiff worked for over thirty years as an automotive mechanic for various employers. On April 3, 1978 he was hired as a mechanic by defendant New Orleans Public Service Inc. at an hourly wage of about $6,155. After working for approximately three months, plaintiff began experiencing shortness of breath and chest pains at work. Plaintiff testified that while repairing an exhaust system on one of the NOPSI buses, he began to feel hot and sweaty, short of breath, nauseated and as if he had "a heavy weight on my chest." When his wife picked him up from work, he told her of the dizziness and nausea.
Plaintiff continued working, attributing the episode to indigestion and exhaustion. About two weeks later, on July 1, plaintiff was working the night shift. He once again experienced pains in his chest, nausea, profuse perspiration and a heavy smothering in his chest. A co-worker, David Cornes, testified that plaintiff told him he felt as if he had indigestion and "was feeling real bad." Mr. Cornes agreed to do all of the more strenuous work, leaving plaintiff to simply drive the buses back and forth to be checked and refueled.
Upon reaching home the next morning, plaintiff related his symptoms to his wife. She convinced plaintiff to go to the hospital on the following day. On Monday, July 3, plaintiff was admitted to the hospital. An electrocardiogram, chest x-rays, blood tests and a stress test were run and normal results obtained. The treating physician, Dr. Oei, diagnosed plaintiff as having suffered angina pectoris due to arteriosclerosis.
Generally speaking, angina pectoris is pain located in the chest area.[1] It is usually caused by an insufficient supply of oxygen to the heart muscle.[2] Arteriosclerosis is a condition marked by a loss of elasticity, thickening and hardening of the arteries. Angina pectoris is often associated with arteriosclerosis because the thickening of the arteries results in a reduction of the blood supply to the heart which in turn causes pain or angina.[3]
Dr. Oei advised plaintiff not to engage in any hard physical labor. Plaintiff asked to return to work for NOPSI on a light duty basis. NOPSI rejected plaintiff's request. According to NOPSI's maintenance manager plaintiff was still a temporary employee and NOPSI policy prohibited the transfer of temporary employees from regular duty to light duty.
Under our workmen's compensation law, plaintiff is entitled to compensation benefits if he has suffered "personal injury by accident arising out of and in the course of his employment." R.S. 23:1031. An "accident" is defined as "an unexpected or unforeseen event happening suddenly or violently, *487 with or without human fault and producing at the time objective symptoms of an injury." R.S. 23:1021(1). The statutory definition limits "injury" to "injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted." R.S. 23:1021(6).
This court had occasion to discuss at length the meaning of these terms in Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). In Ferguson, the plaintiff had been working for the defendant employer about two weeks when he received his pay check. The check was for an amount much less than plaintiff had expected. He became enraged and went to the office to complain, during the course of which he felt a flash of pain followed by paralysis. We found that the plaintiff had suffered an injury arising out of and in the course of his employment. Although not subjected to any blow or trauma, nor injured due to physical stress or strain, he unquestionably suffered "violence to the physical structure of the body."
The Ferguson opinion referred to the workmen's compensation statutory scheme of Great Britain upon which the American workmen's compensation statutes are based. This court found that the British approach to determining whether a disability occurred "by accident" involves an examination of whether there is an accidental result or effect on the employee, rather than whether the disability had an accidental cause. Utilizing that approach, we held that where an injury occurs suddenly and unexpectedly, it is compensable despite the absence of any physical stress or exertion. Thus, we have held without hesitation that a heart attack is a compensable accident within the meaning of our workmen's compensation law. Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975).
In the case before us, plaintiff's disability occurred by accident. Although not subjected to extraordinary stress or exertion at the time of the attacks of angina pectoris, the attacks themselves came suddenly and unexpectedly, causing violence to the structure of plaintiff's body. The episodes happened without warning and in the course of plaintiff's employment.
Defendant contends that plaintiff's claim is not compensable because the angina pectoris resulted from arteriosclerosis, a condition of the arteries which had gradually worsened over the years, rather than a sudden trauma. Defendant's position is untenable. The instant case is virtually indistinguishable from Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969). In Bertrand, the plaintiff suffered an episode of weakness, dizziness or near fainting while working as a laborer. He was diagnosed as having had a nodal tachycardia.[4] About one year later, plaintiff's heart again began to beat erratically and he almost "blacked out," falling to his knees. Defendant denied plaintiff's claim for workmen's compensation, arguing that plaintiff suffered an attack of angina pectoris and that the real cause of plaintiff's disability was arteriosclerosis. The medical testimony revealed that the symptoms were due to a sclerosis or restriction of the arteries which fed the heart muscle so that an insufficient quantity of blood reached the heart during periods of exertion. Plaintiff was diagnosed as having suffered "either angina pectoris (`chest pain' from a coronary insufficiency) or possibly even a slight occlusion." 221 So.2d at 826. This court held that plaintiff had suffered a compensable injury by accident although the attack was precipitated by the gradual thickening of the vessel walls. We stated:
"... What has happened to the plaintiff, according to all of the medical testimony, is that his total physical being and capacity have so changed that because of the symptoms exhibited (tachycardia or angina pectoris) and the preexisting disease (defective atrioventricular node or coronary *488 sclerosis) he cannot return to work of a character similar to that which he had successfully done without pain, complaint, or disability for 16 years before the first episode and for nine months after it ...." 221 So.2d at 827.
It makes no difference that the claimant in Bertrand fell to his knees with pain. Both the plaintiff in Bertrand and plaintiff in the present case experienced an episode of angina pectoris with outward manifestations observable to those nearby.
Defendant seeks to distinguish Bertrand on the ground that the plaintiff in that case may have suffered a slight occlusion. This distinction lacks merit. The Bertrand opinion indicates that there was considerable doubt as to whether the plaintiff had suffered any occlusion at all. The wording of the opinion is that the plaintiff suffered either angina pectoris or possibly even a slight occlusion. It is evidence from this language that the court did not rest its decision on a finding that the plaintiff had experienced an occlusion.
It is well known in the medical field that arteriosclerosis may lead to various consequences including angina pectoris, heart failure, myocardial infarction and even sudden death.[5] If plaintiff had suffered a myocardial infarction[6] (one of several events commonly called a "heart attack") as a result of arteriosclerosis, there would be no question but that a compensable injury had occurred. Roussel v. Colonial Sugars Co., supra. Here, plaintiff suffered from angina pectoris while on the job, brought on by the failure of his heart muscle to receive an adequate supply of oxygen. Both heart attacks and episodes of angina pectoris may be caused by an inadequate oxygen supply to the heart muscle. Both are recognized by the same symptoms, the main difference being that the pain experienced during an infarction is generally more severe and of a longer duration.[7] Given these similarities, there is no justification for granting compensation in the first situation while denying plaintiff recovery.
The Court of Appeal held that plaintiff could not recover because no incident or series of incidents during plaintiff's employment caused the arteriosclerosis or the episodes of angina pectoris. That analysis of causation is faulty. Where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. When dealing with a claim for workmen's compensation, we have repeatedly stated that it is irrelevant whether the accident might have occurred at another place and at another time. The only pertinent inquiry is whether in fact, the accident happened on the job. As enunciated in Bertrand, the test for causal connection is: "Has the accident changed the plaintiff's condition so as to render him disabled and unfit for his former employment?" 221 So.2d at 827. In this case, the question must be answered in the affirmative. All of the medical testimony is to the effect that plaintiff can no longer work as an automotive mechanic. Before the attacks of angina, plaintiff, though suffering from arteriosclerosis, exhibited no disabling symptoms. Having experienced the episodes of pain, all medical experts concur that plaintiff must desist from strenuous work. Therefore, plaintiff has established the causal link between the accident and the disability.
*489 We find that the penalties and attorney fees provided in R.S. 23:1201.2 are not warranted in this case. Plaintiff did not inform his supervisor or any fellow employee of the first angina attack. He returned to work the following day and continued working full time until the next episode. Although plaintiff did mention the subsequent episode to a co-employee, he stayed on the job until completion of his shift. When admitted to the hospital, plaintiff's wife telephoned a supervisor to notify NOPSI that plaintiff would not be able to come to work that day. NOPSI instructed plaintiff's wife to report every morning whether or not plaintiff would be coming to work. From the record before us, no information was given to NOPSI that should have alerted it that plaintiff was absent, not from a "normal illness" or a "non-occupational illness," as one witness put it, but from a job related accident or injury. NOPSI's failure to commence paying benefits within sixty days under these circumstances was not arbitrary, capricious or without probable cause.
For these reasons, the judgment of the Court of Appeal is reversed, at defendant's cost, and there is now judgment finding plaintiff partially disabled; under R.S. 23:1221(3), plaintiff is entitled to receive sixty-six and two-thirds per centum of the difference between the wages he was earning at the time of the injury and any lesser wages earned by him thereafter for a period not to exceed four hundred fifty weeks.[8] Therefore, judgment is rendered in favor of plaintiff and against defendant in the weekly amount of $164.13 for four hundred fifty weeks.
CALOGERO and MARCUS, JJ., dissent and assign reasons.
BLANCHE, J., dissents and hands down reasons.
CALOGERO, Justice, dissenting.
I dissent being of the view that Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969) is not controlling in this case, and that plaintiff has not met his burden of proof in establishing some causal link between the employment and the disabling event.
In Bertrand, the claimant had been working for the same company for over sixteen years prior to the time his disability manifested itself. He had also been checked by a doctor only a few years prior to the onset of his disability and had been found to be free from any heart problems. Furthermore, there was specific evidence that the claimant in Bertrand performed very strenuous duties on a daily basis. Mr. Bertrand suffered chest pains causing collapse while in the middle of lifting a heavy object on the job.
In contrast, in the instant case, the plaintiff, although he had been employed as an automotive mechanic for thirty years, had only been working for the defendant for three months. There was no evidence of a healthy condition prior to his employment at New Orleans Public Service, and little evidence of the strenuousness of his job other than that he worked outside as a mechanic on buses. Mr. Adams made no report to his employer of any pain or injury at the time he allegedly felt the pain, but rather, made the report some time later.
As pointed out in Malone and Johnson's Louisiana Civil Law Treatise, Workers' Compensation, § 215 (1980), while it is recognized that a claimant's burden of proof in these types of cases (heart problems) has been greatly relaxed, "[s]uch cases should not be regarded as dispensing with the requirement that the claimant establish some causal link between the employment and the disabling event."
Because I do not believe that the causal link between the employment and the disabling event has been established in this case, I dissent.
MARCUS, Justice (dissenting).
Under the facts of this case, I do not consider that plaintiff suffered a "personal *490 injury by accident" arising out of and in the course of his employment. Hence, his employer is not obligated to pay compensation. To the extent that Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969), is to the contrary, it should be overruled. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
Plaintiff, a temporary worker with New Orleans Public Service, Inc., suffered from angina pectoris during the time of his employment. He suffered no accident and his condition came about because of his arteriosclerotic condition, which appeared long before he was employed by New Orleans Public Service, Inc. Angina is not a disease; it is a symptom of plaintiff's arteriosclerosis.
The opinion finds that the angina attack on the job was an accident because plaintiff was not expecting one at that time. This is probably correct because he surely was not doing anything different on the job than he had done for the past 30 years. His symptoms and disability were not caused by any accident, and finding one here (or in Bertrand, relied upon by the majority) is, in this writer's opinion, unwarranted.
The Workmen's Compensation Act is not a hospital plan nor social security program. It may be that when a worker such as Bertrand, in stressful employment over a long period of time, is disabled, the Workmen's Compensation Act should care for him. That is a legislative function and surely not a judicial one to stretch the Act to provide compensation without statutory basis and because one may have sympathy for the disabled worker.
New Orleans Public Service, Inc. gets to be "IT" because it was plaintiff's last employer when disease prevented his further productive employment.
I respectfully dissent because his disability was not caused by accident as defined in the Workmen's Compensation Statute.

ON REHEARING
DIXON, Chief Justice.
Several considerations prompted granting a rehearing in this case. One was to reconsider the causal link between Adams' employment and his attacks of angina pectoris; one was to reconsider the causal relationship between the angina incident and the disability; a third was to reconsider some expressions in the original opinion.
Further study of the issues in the case has led the majority to reinstate its original judgment finding plaintiff entitled to compensation for partial disability.

1
The medical evidence was unanimous concerning the cause of angina pectoris. Stress, physical, mental or emotional causes body cells to demand more oxygen, which is carried by the blood. The increasing circulation causes the heart to work harder, which causes the heart muscle, itself, to need more oxygen. The arteries delivering blood to the heart, their walls thickened and their internal diameters diminished by the process of arteriosclerosis, fail to supply blood to the muscle cells of the heart; the approaching necrosis of those cells triggers the painful warning of "angina pectoris."
Adams' work was at times strenous. His first episode was on a hot night when he was removing and replacing the exhaust system of a bus. His second episode was on a similar hot night while servicing the vehicles. On the nights when he was required to service the large wrecker which hauled in disabled buses (and Adams believed his last night was such a night), Adams and his co-worker had to carry five gallon cans of diesel fuel from the pumps to the wrecker, which was too large to move near the pumps.
The defendant did not argue that Adams' work was not strenuous, but that his angina pectoris was caused, not by his employment, but by arteriosclerosis. Arteriosclerosis is a condition which may develop over a period of many years; it is a process of thickening and stiffening of the walls of arteries, and has been found in the *491 bodies of young men. But the fact that a preexisting condition makes a workman more susceptible to injury than a healthy worker does not disqualify the injured worker from receiving compensation. "... an injured worker is still entitled to compensation even though the work accident would not have been disabling to the average healthy employee..." Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981). It is clear that the heat and physical stress of Adams' employment brought on the painful, sickening incident on his last night at work. He is not required to prove that the employment caused his arteriosclerosis. See Guillory v. United States Fidelity & Guaranty Insurance Co., 420 So.2d 119 (La.1982); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968); Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1918).

2
The second issue which the court reconsidered on rehearing was related to the first: did the on-the-job episode of angina pectoris cause Adams' disability, or was it caused by the arteriosclerosis, a disease which the doctors thought Adams must have had for a long time before he came to work for New Orleans Public Service Inc.?
Adams never suspected that he had a cardiovascular disease. He had worked all his life. His work record was good. He did not even have a family doctor, and when he sought medical help on the day after the attack on the job, he had to go to the emergency room of a nearby hospital.
His symptoms were classic and unmistakable, immediately recognized at the hospital where he was promptly admitted. When he realized he needed to stop work, cool off, get his breath and let the pain subside, he had been the victim of an "accident," defined in R.S. 23:1021(1) as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." The event was not gradual, but relatively sudden, and Adams' co-worker and wife could tell by looking at Adams that something had happened to him.
The record before us does not tell us that there was permanently damaged heart tissue after the angina attack, but only that there would be no detectable difference in the affected arteries two days after the incident of angina. The record does disclose that angina pectoris is a "progressive" condition; one doctor expected "angina to be a progressively worse symptom" with the likelihood of thrombosis and infarction becoming increasingly greater with time. After treatment Adams was released to return to work, except work that would require heavy exertion. The defendant would not reemploy him with that limitation on his activities.
Early cases in Louisiana dealt with the argument that the disability was caused by the diseased condition of the worker's body and not by the accident by resort to tort law terminology. "... But the accident was, none the less, the proximate cause of the ... disability..." Behan v. John B. Honor Co., 143 La. at 351, 78 So. at 590. More recent cases have resorted to the use of a rebuttable presumption.
"On the specific issue of the causal connection between the accident and the disability, the claimant is entitled to the benefit of a presumption in certain cases. If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that there is a causal connection between the two, so long as the medical evidence establishes a reasonable possibility of such a connection... This presumption is not conclusive, but it forces the defendant to come forward with sufficient contrary evidence to rebut it." Allor v. Belden Corp., supra at 1236.
That has not happened here. The conclusion to be drawn from all the evidence is not that Adams has recovered from the angina and is now as able as he was before treatment, but that he should avoid the stress of heat and heavy work, or risk the increasing likelihood of thrombosis and infarction.

*492 3
A third consideration for granting a rehearing in this case was to reconsider two expressions (or their implications) in the original opinion. One had to do with compensability for injury in the absence of physical stress or exertion; the other, that the only pertinent inquiry, when it is argued that the accident might have occurred at another place and at another time, is whether in fact the accident happened on the job.
It is needless, now, to discuss the differences arising from these statements in this opinion. Agreement on their meaning and implications is not essential to the conclusion of the majority that Adams is entitled to compensation. After rehearing was granted in the Adams case, Guidry v. Sline, supra, was decided. There, a majority of the court stated, "we expressly reject" the two statements in the first Adams opinion.[1] The rejection is discussed at length in the Guidry opinion.
For these reasons, the original opinion (with the exception noted in 3 above) and judgment of this court is reinstated, and there is now judgment in favor of plaintiff and against defendant in the weekly amount of $164.13 for four hundred fifty weeks, at defendant's cost.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
LEMMON, J., dissents, noting that this case is vastly different on its facts from Guillory v. United States Fidelity & Guaranty Insurance Co.
MARCUS, Justice (dissenting).
I do not consider that Adams' angina pectoris was caused by his employment; rather, I consider that it was caused by arteriosclerosis. Hence, there was no accidental injury. In other words, Adams' disability was not caused by an employment-related accident; rather, his disability was caused by the arteriosclerosis which produced anginal pain. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
I do not consider that Adams' angina pectoris was an "accident" which would be compensable under the worker's compensation law. Angina pectoris is a symptom rather than a disease; it is a symptom of arteriosclerosis. A heart attack is an accident which will allow recovery. Barnes v. City of New Orleans, 322 So.2d 821 (La. App. 4th Cir. 1975), writ refused 325 So.2d 584 (1975); City of Alexandria v. Perkins, 302 So.2d 682 (La.App. 3rd Cir. 1974), writ refused 305 So.2d 129 (1974); Sherman v. Southern Scrap Material Co., Ltd., 284 So.2d 71 (La.App. 4th Cir. 1973), writ refused 286 So.2d 661 (1973). However, the record shows that Adams did not suffer a heart attack and that his arteriosclerosis was a pre-existing condition which was not brought about by any employment related accident. A fair reading of the record shows that Adams' condition following the angina attack was exactly the same as it was before. Adams still suffers from the disease, arteriosclerosis.

APPLICATION FOR REHEARING
PER CURIAM.
Defendant correctly points out an error in computation in our original judgment, which was reinstated on rehearing. Our original judgment was rendered "in the weekly amount of $164.13 for four hundred fifty weeks." That amount should have been $130.00. Our original judgment is therefore amended, and there is judgment in favor of plaintiff and against defendant in the weekly amount of $130.00 for four hundred fifty weeks.
The application for rehearing is denied.
NOTES
[1] In medical terminology, angina pectoris is a paroxysmal thoracic pain, with a feeling of suffocation and impending death, due most often to anoxia of the myocardium and precipitated by effort or excitement. Anoxia is an absence or lack of oxygen. Dorland's Medical Dictionary, 24th ed. (1965).

Angina pectoris may be a vague, barely troublesome ache, or it may become a severe, intense precordial crushing sensation. The pain may radiate to the left shoulder and down the inside of the left arm. The Merck Manual, 13th ed., p. 478 (1977).
[2] The Merck Manual, 13th ed., p. 478 (1977). The deposition of Dr. Sterling Dunn, an expert witness of defendant, was introduced into evidence. In his deposition, Dr. Dunn explains that muscles produce sugar in the presence of oxygen. When the demand placed upon the muscles exceeds the oxygen supply, the combustion of sugar continues but lactic acid builds up. When the amount of lactic acid reaches a certain level, it causes pain. The thickening of the arteries associated with arteriosclerosis may impede the blood supply to the muscles causing lactic acid to accumulate and resulting in angina or pain.
[3] The Merck Manual, 13th ed., p. 478 (1977).
[4] Tachycardia is excessive rapidity in the action of the heart. Dorland's Medical Dictionary, 24th ed. (1961).
[5] According to The Merck Manual, reduction of the blood supply to the myocardium (heart) by hardening of the coronary arteries frequently results in angina pectoris. It produces myocardial damage that may lead to congestive heart failure or various cardiac arrhythmias. If an artery is occluded, an infarction may result. The Merck Manual, 13th ed., p. 484 (1977). Thus, arteriosclerosis may be responsible for several different consequences.
[6] A myocardial infarction is damage to a portion of the heart muscle by myocardial ischemia (lack of oxygen) usually the result of coronary artery occlusion, generally characterized by pain similar to that of angina pectoris, and sometimes by shock, cardiac dysfunction, and sudden death. The Merck Manual, 13th ed., pp. 484-485 (1977). See also, Hurst, The Heart, 4th ed., pp. 1124-1126 (1978).
[7] The Merck Manual, 13th ed., pp. 484-485 (1977).
[8] The record shows that plaintiff's hourly wage was $6,155 at the time of the accident and that he is not currently employed. The average weekly wage would amount to approximately $246.20, computed on a forty hour work week. See R.S. 23:1021(7).
[1] I regret that I can find no merit in the "rejection" of the statements which, taken in context, were not incorrect and might have helped eliminate some specious arguments in compensation cases.